IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MANUEL DANIEL, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. CIV-17-120-F |
| ) | |
| JANET DOWLING, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Manuel Daniel, Jr., a state prisoner appearing *pro se,* filed a Petition for Writ of Habeas Corpus challenging his state court conviction pursuant to 28 U.S.C. § 2254 (ECF No. 1) and United States District Judge Stephen P. Friot referred the matter to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Respondent filed a Response (ECF No. 9) and the state court records, (ECF No. 11), and Petitioner thereafter replied, (ECF No. 12). For the reasons set forth below, it is recommended that the Court **DENY** the Petition.

I. **BACKGROUND**

In Jackson County District Court, Case No. CF-2012-94, the State charged Petitioner with the first degree murder of Melissa Debra Bost. (Original Record, Case No. CF-2012-94 (file-stamped May 24, 2012) at 1 (OR)).[1] The jury convicted Petitioner, and

---

[1] For clarity, citations to trial transcripts and state court records will refer to the document's original pagination; and citations to the parties' briefs will refer to the Court's CM/ECF pagination.

in accordance with its recommendation, the trial court sentenced Petitioner to life imprisonment. (OR 209, 294-96).

Petitioner appealed to the Oklahoma Court of Criminal Appeals (OCCA), and that court affirmed the conviction. (ECF No. 9:Exs. 1, 3). Petitioner timely proceeded to this Court.[2]

## II. PETITIONER'S HABEAS CLAIM

In his one habeas claim, Petitioner alleges he is actually innocent of first degree murder because the State presented insufficient evidence to support his conviction. (ECF No. 1:4-7). For two reasons, the Court should liberally construe Petitioner's argument as claiming insufficiency of the evidence, rather than asserting a free-standing actual innocence claim.

First, the Supreme Court has not resolved "whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 838, 133 S. Ct. 1924, 1931 (2013). So, interpreting Petitioner's allegation in this manner would likely result in dismissal. *See, e.g., LaFevers v. Gibson*, 238 F.3d 1263, 1265 n.4 (10th Cir. 2001) ("[A]n assertion of actual innocence, although operating as a potential pathway for reaching otherwise defaulted constitutional claims, does not, standing alone, support the granting of the writ of habeas corpus."). Second, Petitioner does not allege there is any newly discovered evidence – a longstanding requirement to

---

[2] Petitioner's subsequent procedural efforts to overturn his conviction in state court are irrelevant to this action.

prove actual innocence. *See, e.g., Schlup v. Delo*, 513 U.S. 298, 324 (1995). Instead, he alleges that the State's evidence was insufficient because there was no forensic evidence linking him to the crime. (ECF No. 1:4-6). With this description, the undersigned interprets Petitioner's argument as seeking habeas relief based on insufficiency of the evidence and not as asserting a free-standing actual innocence claim.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's power to grant habeas corpus relief. "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Where, as here, the state court has considered the claim on its merits, "this [C]ourt may grant a habeas petition only if the decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States' or 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hanson v. Sherrod*, 797 F.3d 810, 824 (10th Cir. 2015) (citation omitted)). "It is the petitioner's burden to make this showing and it is a burden intentionally designed to be 'difficult to meet.'" *Owens v. Trammell*, 792 F.3d 1234, 1242 (10th Cir. 2015) (citation omitted). Indeed, this standard "reflects the view that habeas corpus is a guard

against extreme malfunctions in the state criminal justice system, not a substitute for ordinary error correction through appeal." *Harrington*, 562 U.S. at 102-03.

This Court first determines "whether the petitioner's claim is based on clearly established federal law, focusing exclusively on Supreme Court decisions." *Hanson*, 797 F.3d at 824. Clearly established federal law consists of Supreme Court holdings in cases where the facts are similar to the facts in the petitioner's case. *See House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If clearly established federal law exists, this Court then considers whether the state court decision was contrary to or an unreasonable application of that clearly established federal law. *See Owens*, 792 F.3d at 1242.

"A state court's decision is 'contrary to' clearly established federal law 'if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Court has on a set of materially indistinguishable facts.'" *Id.* (citations omitted). Notably, "'[i]t is not enough that the state court decided an issue contrary to a lower federal court's conception of how the rule should be applied; the state court decision must be 'diametrically different' and 'mutually opposed' to the Supreme Court decision itself.'" *Id.* (citation omitted).

The "'unreasonable application' prong requires [the petitioner to prove] that the state court 'identified the correct governing legal principle from Supreme Court decisions but unreasonably applied that principle to the facts of the prisoner's case.'" *Id.* (citations and internal brackets omitted). On this point, "the relevant inquiry is not whether the state court's application of federal law was *incorrect*, but whether it was 'objectively

4

unreasonable.'" *Id.* (citations omitted). So, to qualify for habeas relief on this prong, the petitioner must show "'there was no reasonable basis' for the state court's determination." *Id.* at 1242-43 (citation omitted). "In other words, 'so long as fairminded jurists could disagree on the correctness of the state court's decision,' habeas relief is unavailable." *Id.* at 1243 (citation omitted); *see also Harrington*, 562 U.S. at 103 ("As a condition for obtaining federal habeas relief, . . . a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

## IV.   TESTIMONY AT TRIAL

Alicia Rosales arrived at Petitioner's home in Altus, Oklahoma in the early hours of February 28, 2012, to rest and "get high." (Transcript of Jury Trial, Case No. CF-2012-94 (file-stamped Jackson Co. May 5, 2014) Vol. dated Jan. 28, 2014 at 143) (Trial TR Jan. 28, 2014))). According to Ms. Rosales, Petitioner and another individual – Alex Castillo – called Melissa Bost asking her to come sell them drugs. (Trial TR Jan. 28, 2014 at 143-44); (Transcript of Jury Trial, Case No. CF-2012-94 (file-stamped Jackson Co. May 5, 2014) Vol. dated Jan. 29, 2014 at 15-16) (Trial TR Jan. 29, 2014))). However, because none of them had any money, Petitioner and Mr. Castillo's plan was actually to rob Ms. Bost. (Trial TR Jan. 28, 2014 at 144-45; Trial TR Jan. 29, 2014 at 14-16). Petitioner called Ms. Bost multiple times in those early morning hours. (Transcript of Jury Trial, Case No. CF-2012-94 (file-stamped May 5, 2014) Vol. dated Jan. 22, 2014 at 126-28) (Trial TR Jan.

5

22, 2014))). Ms. Rosales testified that a few minutes after Ms. Bost arrived, and she realized they didn't have any money, Mr. Castillo began beating her on her body and head with a bar and Petitioner began stabbing her multiple times in the body and neck. (Trial TR Jan. 28, 2014 at 144, 148; Trial TR Jan. 29, 2014 at 18-22). Ms. Bost screamed, fought, and scratched Petitioner, but she eventually succumb to the assault and died. (Trial TR Jan. 28, 2014 at 148-153; Trial TR Jan. 29, 2014 at 19-29). Petitioner and Mr. Castillo then carried Ms. Bost's body out to her car and drove her car away. (Trial TR Jan. 28, 2014 at 154-55; Trial TR Jan. 29, 2014 at 31-33). Ms. Rosales admitted that she initially told the police several lies (implicating another party besides Mr. Castillo) and that she had reached a favorable plea agreement with prosecutors (for her role in the attempted robbery) in exchange for her truthful testimony. (Trial TR Jan. 28, 2014 at 139-42, 160, 191).

Around 9:30 a.m. on February 28, 2012, an Altus resident noticed a car parked in a nearby alleyway. (Trial TR Jan. 22, 2014 at 73). When the car had not moved by 3:15 p.m., she called the police and they discovered Ms. Bost's body inside the car. (Trial TR Jan. 22, 2014 at 72-74, 81-91). The medical examiner testified that Ms. Bost had been stabbed multiple times, including three significant stab wounds to her neck, and had suffered many blunt force traumas to her body and head, possibly from a bar or baseball bat. (Transcript of Jury Trial, Case No. CF-2012-94 (file-stamped May 5, 2014) Vol. dated Jan. 23, 2014 at 124-47) (Trial TR Jan. 23, 2014))). Ms. Bost also had several broken fingernails. (Trial TR Jan. 23, 2014 at 147-50).

When Ms. Bost did not respond to her husband's phone calls on February 28, 2012, and he noticed that she was gone but had not taken her purse, he became concerned and checked their cellphone records. (Trial TR Jan. 22, 2014 at 120-22, 140). Seeing that Petitioner had called Ms. Bost multiple times in the early-morning hours, Mr. Bost stopped at Petitioner's house on his way to make a missing person's report. (Trial TR Jan. 22, 2014 at 126-32). According to Mr. Bost, Petitioner answered the door and admitted he had seen Ms. Bost early that morning. He told Mr. Bost that she had left his house to go make "a drop," or "drop off some drugs" and was going to return home. (Trial TR Jan. 22, 2014 at 133). Mr. Bost testified that Petitioner seemed "nervous" or "wired." (Trial TR Jan. 22, 2014 at 135).

In the course of investigation, Altus Detective Captain Tommy Uptergrove interviewed Petitioner at his home on February 29, 2012. (Trial TR Jan. 22, 2014 at 187, 190). Petitioner told Uptergrove that he had last seen Ms. Bost in the afternoon of February 27, 2012, and while admitting that he had tried to call Ms. Bost in the early-morning hours of February 28th, denied that he had actually seen her. (Trial TR Jan. 22, 2014 at 190-91, 195). Uptergrove noted that Petitioner had "several gouges and abrasions and scratches on his hands and his knee and arm, and other parts of his body." (Trial TR Jan. 22, 2014 at 206 & State's Exs. 27-35). Petitioner claimed to have been injured while roofing a house. (Trial TR Jan. 22, 2014 at 211-12). While a lab technician initially testified that Petitioner's DNA had been "excluded" from that found under Ms.

7

Bost's fingernails, she later clarified that she had been unable to gather *any* DNA profile from under Ms. Bost's remaining fingernails. (Trial TR Jan. 23, 2014 at 215-16, 224-25).

On March 30, 2012, Altus police officers executed a search warrant of Petitioner's house. (Trial TR Jan. 22, 2014 at 203; Trial TR Jan. 23, 2014 at 61). There they discovered Petitioner had removed large carpet pieces and had scrubbed the underlying wooden floors. (Trial TR Jan. 22, 2014 at 203-204). When officers sprayed luminol "to look for traces of blood patterns" in the "second room of the house where the carpet had been removed," Uptergrove observed "a large pattern" "spread out in several dots like looking up at the starry sky." (Trial TR Jan. 22, 2014 at 214-16). In the front room, luminol reacted on the carpet and "mimicked the design of a vacuum cleaner." (Trial TR Jan. 22, 2014 at 220-21; *see also* Trial TR Jan. 23, 2014 at 74-75). Officers then sprayed the bottom of the vacuum cleaner with luminol, and it "showed a very strong reaction." (Trial TR Jan. 23, 2014 at 75). Officers seized the vacuum and, after sifting through the container's contents, found a torn fingernail belonging to Ms. Bost. (Trial TR Jan. 23, 2014 at 76-80, 187).

Petitioner claimed he removed the carpets and cleaned because pets had soiled the areas. (Trial TR Jan. 22, 2014 at 201-203, 224). However, at least two witnesses found his cleaning suspicious. For example, Petitioner's neighbor testified that she watched him carry numerous boxes several blocks away to discard in a dumpster, rather than using the dumpster directly behind his house. (Transcript of Jury Trial, Case No. CF-2012-94 (file-stamped May 5, 2014) Vol. dated Jan. 27, 2014 at 7-14) (Trial TR Jan. 27,

2014))). Another witness testified that she found it "unusual" when Petitioner told her that he had been cleaning on February 28, 2012, because "that house hadn't been cleaned in a long time" and was "nasty" and "dirty." (Trial TR Jan. 27, 2014 at 144).

Forensic testing did not confirm the presence of blood in any sample taken from Petitioner's house. (Trial TR Jan. 23, 2014 at 209-10). However, Altus Detective Rusty Williams testified that bleach and/or ammonia can "destroy the evidence of blood" and that such "cleaning materials" can "dilute[] the sample down so that you" "will get a negative test" for blood. (Transcript of Jury Trial, Case No. CF-2012-94 (file-stamped May 5, 2014) Vol. dated Jan. 24, 2014 at 178-80) (Trial TR Jan. 24, 2014))). Officer Williams admitted that luminol will also react to the presence of bleach. (Trial TR Jan. 24, 2014).

After Petitioner was arrested and had been in the Jackson County jail for a period of time, his cellmate, Waylon Adcock, approached the State and said Petitioner had made incriminating statements. (Trial TR Jan. 28, 2014 at 85-87). According to Altus Detective Bill Perkins, Mr. Adcock "had details about the murder" "that only persons that would have been there would have known." (Trial TR Jan. 23, 2014 at 94). According to Mr. Adcock, Petitioner told him that he and a girl were going to rob Ms. Bost but when Ms. Bost "didn't bring her purse" and the robbery otherwise did not go according to plan, Petitioner stabbed Ms. Bost in the neck and then left her body in an alley. (Trial TR Jan. 28, 2014 at 90-91). Mr. Adcock admitted that he was receiving a favorable agreement with the State regarding a pending motion to revoke in exchange for his testimony. (Trial TR Jan. 28, 2014 at 94-95).

**V.     ANALYSIS**

According to Petitioner, the evidence was insufficient to support his conviction because there was no blood found in his house, his DNA was not found under Ms. Bost's fingernails, and neither his blood nor his DNA were found in Ms. Bost's car. (ECF No. 1:4-7).[3] Habeas relief is not warranted on these grounds.

**A.     Clearly Established Law**

The United States Supreme Court clearly established the constitutional right to sufficient evidence of guilt in *Jackson v. Virginia*. 443 U.S. 307, 324 (1979); *see Lott v. Trammell*, 705 F.3d 1167, 1219 (10th Cir. 2013) (agreeing *Jackson* provided "the clearly established law applicable to [an insufficient evidence] claim"). So, the question is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. *Jackson's* standard for evidence sufficiency

---

[3] In his reply brief, Petitioner raises new "issues," arguing for the first time that Ms. Rosales and Mr. Adcock gave "false testimony at trial" and complaining that officers never found or questioned Mr. Castillo about his alleged involvement in the crime. (ECF No. 12:5-8). But this Court need not address allegations made for the first time in a reply brief. *See, e.g., United States v. Wayne*, 591 F.3d 1326, 1336 n.9 (10th Cir. 2010) (declining to address an argument raised for the first time in a reply brief). Further, Petitioner's attorney strenuously cross-examined all the witnesses, including Ms. Rosales and Mr. Adcock, highlighting inconsistencies and possible motives for lying (either to the police or at trial). (Trial TR Jan. 28, 2014 at 96-125, 169-226; Trial TR Jan. 29, 2014 at 5-73, 93-103). The jury was thus well aware of the witnesses' inconsistencies and motives and nevertheless credited their testimony. In habeas review, "[w]e do not have the benefit of observing the witnesses in the crucible of the courtroom during direct and cross-examination and thus are not in a position to second-guess the jury's credibility determinations." *Parker v. Scott*, 394 F.3d 1302, 1315 (10th Cir. 2005); *see also Glossip v. Trammell*, 530 F. App'x 708, 742-43 (10th Cir. 2013) (rejecting petitioner's argument the OCCA "was obligated to second guess the jury's credibility" in finding the evidence sufficient).

"must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.

### B. The Elements of First Degree Murder

To convict Petitioner of first degree murder in Oklahoma, the State had to prove he unlawfully caused Ms. Bost's death "with malice aforethought." OUJI-CR 4-61; *see also* Okla. Stat. tit. 21, § 701.7(A).

### C. The OCCA's Ruling

Rejecting Petitioner's claim on direct appeal, the OCCA held that "[t]aking the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt." (ECF No. 9:Ex. 3:3).

### D. Analysis

Petitioner alleges that the State "produced **absolutely no evidence**" to support his conviction because it lacked any forensic evidence directly tying him to Ms. Bost's death. (ECF No. 1:6 (emphasis in original)). But the State need not present physical evidence to support a conviction. *See Matthews v. Workman*, 577 F.3d 1175, 1185 (10th Cir. 2009) (rejecting petitioner's claim the OCCA unreasonably applied *Jackson* because the State failed to "introduce blood, DNA, or fingerprint evidence, or eyewitness testimony" because "*Jackson* does not require such evidence to sustain a criminal conviction"); *Pavatt v. Trammell*, No. CIV-08-470-R, 2014 WL 1745019, at *20 (W.D. Okla. May 1, 2014) (unpublished district court opinion) ("*Jackson* does not favor one

particular type of evidence over another, and so the fact that Petitioner was not linked to the murder by [physical] evidence is of no particular consequence."), *affirmed in part and reversed in part on other grounds*, *Pavatt v. Royal*, 859 F.3d 920 (10th Cir. 2017). As illustrated above, the State provided other direct and circumstantial evidence that Petitioner stabbed Ms. Bost to death, and more importantly, Petitioner has failed to show the OCCA unreasonably applied *Jackson* in rejecting his claim on direct appeal. Accordingly, the undersigned recommends that the Court reject Petitioner's insufficiency of the evidence claim.

## VI. RECOMMENDATION

Because the OCCA reasonably applied federal law in rejecting Petitioner's claim on direct appeal, the Court should **DENY** the Petition for Writ of Habeas Corpus **(ECF No. 1).**

## VII. NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file an objection to this Report and Recommendation with the court clerk by **December 14, 2017**, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010).

**VIII. STATUS OF REFERRAL**

This Report and Recommendation terminates the District Judge's referral in this matter.

ENTERED on November 27, 2017.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE